And we'll hear argument next in R.H. v. Board of Education, 18-1852, 18-1951.  Good morning, Your Honors. May it please the Court, Ben Heinerfeld and Gina DiCresenzo on behalf of Plaintiff R.H. And we feel that the most helpful thing we can do is explain why the State Review Officer's decision is not entitled to deference. And there are three main reasons. There's a factual reason, a legal reason, and then an error of legal reasoning. The factual reason is that the State Review Officer actually made up a false factual narrative that C.H. regressed when he was at the Ridge School. After the impartial hearing officer's decision, it was pretty clear that he had made significant progress at the Ridge School. The I.H.O. found four ways that he said that C.H. actually regressed. He said that he would leave class for ten minutes at a time, he got into an altercation, he stopped reading aloud, and that he would stop completing work. If you look at the record, none of those things were actual regression from where he was in the district or the BOCES placement. In each case, he had actually left class more in the BOCES placement. He had gotten into numerous altercations in the BOCES placement. He completed work less in the BOCES placement to the point that by December of 2014, he had simply no output whatsoever, according to the BOCES witness. And with respect to reading aloud, first of all, it's not a particularly important skill for R.H., for a kid who has anxiety and high-functioning autism. But there's no evidence that he ever read aloud in the BOCES placement. Even if we were to agree with you that it was erroneous to find that there was regression, what measures do you point to to establish actual progress? And I understood the theme running through the district court and the SRO decision was that there were remarkably few measures. This was a very small school. It didn't have a written plan. It didn't have written standards. There were observations that were anecdotal that suggested he had less school aversion at the Ridge School. But there was remarkably little, and that was kind of concordant with the commissioner's failure to accredit them for special education for two years running the school, I understood. So what do you point to in the record to establish that there was, in fact, progress? Well, the thing we point to is expert testimony, unrebutted expert testimony that he had made tremendous social, emotional, and behavioral progress at Ridge. And Dr. Meyer testified. What about educational progress? Educational progress, first of all, the most objective sign is he has zero absences at Ridge School. That's school aversion, but that's not necessarily education. I mean, if you show up at school, then you can get educated. Sure. Well, the testimony was from Linda Condor, his teacher at the Ridge School, who said he was making progress in every subject area. No, no, no, no, no, no. What she says is in emotional and behavioral areas, that there are no test scores, there are no progress reports that she could point to. Sure. And one of the things is that's a function of the timing of the litigation, Your Honor. So this case was filed in July, and that's necessary. The parent had essentially committed a lot of funds to the school and wanted to get the litigation started. By the time the case began, we're only talking about October and November. And so there really aren't – I'm deeply sympathetic to this, but we need record evidence. So you said that Ms. Condor testified about all types of progress, including, I take it, educational progress. But I didn't see that. I saw references in her testimony to progress related to his emotional and behavioral well-being. Sure. But he also made progress with respect to – in math, she talked about very specific math skills that he was working on with her. Talking about – I believe she talked about different aspects of writing. In other words, he was able to complete sentences more, although using his iPad, he was writing more complete sentences. She's an owner with her husband of the school, is that right? I believe they do own it, yes. Was any independent testing done, standardized testing of any kind, to show his progress? Her testimony – and I think it's credible, and the IHO found it credible. I'm asking whether any independent – Not by the time of the trial, no. The trial was – not even an entire semester had gone by at the time of the trial. Okay. So the underlying factual error is – well, I mean, I want to actually return back to the idea of progress here. When you look at the main issue for C.H., it was school-based refusal. That was part of his autism. That was part of his anxiety. And it was very important that he was in a school that could address that directly. So this isn't a case – a lot of the court's cases have to do with parents being placed in elite private schools. So that is the way in which the private school placement was tailored to his unique needs? That is one of the ways it was tailored. And it was sufficiently pleasant and unthreatening that he would be willing to attend it? Well, it was more than that, Your Honor. It had a four-to-two class ratio. It was attuned to his sensory needs. It did provide related services. This is starting to sound like the things that any parent would want for their child. But respectfully, Your Honor, no parent of a neurotypical child would want their child at the Ridge School, which is a school for four children with high-functioning autism. It's very different from, say, the Oakwood School in the Gagliardo case where children were mainstreamed. CH was in what we would call a special class, and it was kids who all had the same needs and who were at the same levels of ability. The school district was offering a placement in a program for Asperger children, which are higher-functioning children on the spectrum. I think the record is pretty clear that the API classroom that the school district offered was really indeterminate and that there had been a lot of problems in the past about who exactly would be in those classes. And at the time that RH had to make the decision for his son, there was simply no way to know whether CH would be in a class composed of the same types of children. And having just experienced what happens when he was with children who caused distress, where he had missed pretty much all but four days of school, it was very important he had a right to know who would be in his class for the following year. So, yes, they technically on paper offered... When you say who, you mean what their deficits and conditions would be? Whether they would have, for example, the same behavioral needs. So CH responded very poorly when children with bad behaviors were in the same class as him. He was a very rule-following kid. And so when other kids would act out, he would take it on himself very badly. And that was one of the main things that caused him to stop going to school throughout the prior school year. You also argue that the review officer overturned the impartial hearing officer's credibility determinations. Is that right? Yes. Can you point to a specific page in the state review officer's decision where that was done? It's either page 26 or 27. And it's the way the state review officer does it is by implication. She simply disregards the findings of Dr. Monica Meyer completely. And I think the law says that if you're going to disregard the factual finding of an IHO, the state review officer is supposed to explain why, give compelling reasons why. And she never does that. She never at all. There's a footnote. It's either 20 or 22 where she refers to testimony as anecdotal. I think she's referring to Linda Condor. But what she doesn't do is address the unrebutted expert testimony of Dr. Meyer and Holly Ellison, the nurse practitioner, both of which the IHO directly relied on. And whether that's expressly saying I'm not finding them credible or simply omitting them, the effect is the same. They're read out of the record. And that's the main factual predicate, or one of the main factual predicates, for finding out how much social-emotional-behavioral progress CH made. Did the research have a written educational or behavioral plan that they gave to the parent before the student began studies there? No, they did not, Your Honor. And that's in Ms. Condor. Yes, she does. And the reason why is they had 20 years of experience dealing with this exact type of child, children with high-functioning autism who struggled with anxiety. And it was a small enough class that they didn't need an individual plan. Are you familiar with our recent decision in WA v. Hendrick-Hudson Central School District? I am, Your Honor, yes. And how does that, if at all, affect your argument here? Well, what I would say is this. WA dealt with the Northwood School, which is a posh boarding school in Lake Placid. If you look at the website, you'll see what I'm talking about. You say posh. That sounds like you're going to the website, Your Honor. You can check out their tour. So WA himself was in a regular class there. There was no pretense that it was a special education class. What counsel argued in that case, Judge Jacobs, I think you were on the panel on this. Either Judge Jacobs or your colleague, Judge Hall, asked, well, what if it's a school with four or five kids? And the premise being that does every kid at Northwood need his or her own program? And the question was, what if it's a school where all the kids have the same needs? And counsel for the Hudson School District said, I think since like the ten-minute mark, well, that's clearly not Northwood, Your Honor. Northwood is not a special ed school. And in their brief, they actually argue that Northwood didn't have a special class. I don't know if you want to go to their brief, but it's on page 45. They talk about the New York regulations and what constitutes a special class under New York law. And they're arguing, no, New York law doesn't call what Northwood's class is a special class. If you look at the criteria, and I can give you the site if you want, it's, I think, 200.6, 200.1UU, 8NYCRR 200.1UU, talks about what a special class is. And it's a class consisting of students with disabilities who have been grouped together because of similar individual needs for the purpose of being provided specially designed instruction as defined in sub VV of this section. That's the tailoring that you're talking about? Yes, yes. And so in that decision, it looks like the court carved out a space for a school like Ridge. It said there may be some circumstances in which kids all receiving the same type of instruction may still be considered to be getting individual instruction. It's almost as if it's pointing directly at Ridge in that decision. It would be by analogy to a school of one? By analogy, yes, Your Honor. Thank you very much. You've reserved two minutes for rebuttal. We'll hear from Mr. Strong. David Strong for the Saugerty Central School District. May it please the Court. Your Honors, I'd like to first correct two inaccuracies that I perceive in the argument that counsel just made. Number one, the word regression, as far as I can see, never appears anywhere in the state review officer's decision. I'm sorry? The word regression never appears in the state review officer's decision. It does appear in the district court's decision. The word ration. Regression. Regression. I apologize. So that word does not appear in the state review officer's decision. And I think it does appear in the district court's decision when the district court undertook its independent review of the record. The reason I bring that up, I think, is the thrust of the case. They mention progress. Progress is relevant but not determinative in deciding whether a private school provides specially designed instruction tailored to meet a student's unique needs. And that is really the crux of the prong to standard. And on that issue, that determination of does this school and the SRO went through, the students who were there, the kind of instruction. What does that mean that progress is relevant but not dispositive or determinative? And I agree that that's what we've said. What does that mean? Sure. So, for example, grades and test scores. Say the student went there and got all As, but the student's not getting appropriate counseling. To get at those underlying issues of there's anxiety, we need counseling to identify the triggers, to develop a coping mechanism, to have those strategies that are tailored for you so when that situation arises, they're responding in a more appropriate way. So even if they're getting those As and Bs, and here there's no report card, there's no document, there's no progress reports or summaries, but even if that was the case, that there was progress, that alone would not mean that the private school was appropriate. And it goes back to that specially designed instruction tailored to meet the student's unique needs. Your adversary's argument is that the school has just a handful of students and they all have the deficits and the characteristics that this school deals with and that, therefore, it would be as though you had a school of one that was just tailored to the one student, but you have four, and they are similar in their needs, and the school addresses those needs. Why is that not sufficient for tailoring? Dia Soro went into detail as to what kind of instruction actually happens in that classroom. There are four students, one 6th grader, one 7th grader, the student here, two 9th graders. They sit around a table. They take turns reading from the same book. They're all taking high school level courses. This student in particular doesn't want to read in two of the four classes. Respectfully, that's not differentiation of instruction. That's not tailoring it to progressive education. The kid will do it when the kid's ready to do it. And on that issue of whether this type of instruction, Dia Soro described it, what it was, and that's an educational determination. Is this appropriate for this particular student with this particular student's needs? The student diagnosed with Asperger's syndrome, the student with anxiety, language-pragmatic difficulties, a student like that, from Dia Soro's view, needs that counseling honed in on those stress triggers, needs that speech-language therapy to address those pragmatic language difficulties. But you're saying it's not just the lack of documentation and planning and progress reports, but in fact he wasn't being provided with what is required for a complete and comprehensive educational plan. Is that right? Correct. And there's really two prongs to it, both within Dia Soro's area of educational expertise. One is the sufficiency of the evidence to even reach a determination, and Dia Soro found here the record was insufficient. And Dia Soro also went on to note areas where there was not enough evidence of specially designed instruction. Recognizing that improved attendance is progress. Dia Soro doesn't dispute that. But the core of the argument is really the specially designed instruction tailored to meet the student's unique needs. So if she had just written down, Ms. Condor had just written down what it was she was doing periodically over the first two months, because clearly, as Judge Jacobs was pointing out, the class was small enough that she could respond to individual needs in a very tailored way. If she had just documented that, would that have sufficed? Not in our opinion, because it wasn't just the size. Although, as the court pointed out in Frank G., small class size could be a factor, but it's not just that. It's what's happening in that class. What kind of methodologies and techniques are you using to get at those skills? And for a student on the autism spectrum, it's a specific and unique set of skills and strategies that have to be used. Again, we're going back to an educational determination. These are difficult questions of fact and analysis, and for that reason, the district submits that deference is appropriate to the SRO on those questions. Are we to ignore the possibility that a child will learn nothing in a school where the child is bullied, afraid to go to school, and the conditions are shambolic, and can learn something in a school that is sheltered? I mean, there's a finding that the assignment by the board was sufficiently unsatisfactory that the child was unwilling to go to school, maybe with some justification. Correct. And that, for the 2013-2014 school year, which is not an appeal, that was one of the findings, that it was not appropriate for a portion of the school year. And as the court has told previously, bullying can be a factor for the denial of faith. But as the court pointed out in Gagliardo, even where the school district's program is inappropriate, it's a separate analysis. The private school still has to be the parent has to meet that burden, and proponents of the evidence to show that the private school was appropriate. So it's certainly bullying could be a factor. But in this case, the focus on prong two is on the private school. Did it provide the specially designed instruction, acknowledging that there was some progress in attendance, but that's not enough. And that, again, was an educational issue for deference to the SRO. I take it that part of your point is that we would require some more objective measure of progress than what we've got. Correct. What case, what doctrine requires that the evidence has got to be objective? We've got the testimony of Ms. Condor. We've got the testimony of some of these other experts. Why isn't that enough evidence? Why does it matter if it's not objective? Sure, and that would be the Hardison case, where the court talked about the sufficiency of the evidence and the preference for objective information. Objective information is, frankly, a lot easier for non-educational experts like attorneys to look at and see, okay, well, they took a test, and there's a particular score. It's an objective measure. Or something like a standardized assessment, where there's a norm referenced guide, and we can say, okay, the student is scoring at the 50th percentile. That puts them right in the middle. So those kind of measures are just, they're by nature objective, and they're not subject to interpretation or just bare observation. School attendance was objective. Yes, and, again, the SRO recognized that. And, you know, going to school and physically being there, that's objective. We don't dispute that. We don't want to quibble over numbers, but at Appendix 204, the student did miss one day. But, again, progress, and we don't dispute that. But was that progress enough? And in the SRO's determination, again, on this educational issue, the assessment of progress, an educational issue within the SRO's expertise, we'd also point out that the record before the SRO was exactly the same as that which was before the district court and now this panel, which, again, we would submit would support deference to the SRO's decision. If there are no further questions, I'll rest on my brief. Thank you very much. We'll hear from Mr. Heinfeld. Just a few points, Your Honors. I know I've taken a lot of time. First, CH did not struggle academically in his earlier placement. He did struggle with attendance, and there is, as Judge Carney said, that he basically went from zero to 100 in terms of that objective evidence. The second thing I would say is it shouldn't be the same record, and this is why when I started the argument, I talked about the factual inaccuracies that the SRO made, which then went up to the district court. Had the SRO not made these, what I think are just false inferences about regression, it would have been a different record. And then the final thing is a lot of this case was about evidence and what evidence was there of progress. Why didn't the SRO just remand and ask for more evidence? It's a remedial statute. The dad had had to pick a school sort of under the gun to find where he could send his kid. It would have been the SRO had the authority. Is there a piece of evidence that the SRO completely missed or ignored? What I'm saying is there was only two months of school. By the time the SRO made its decision, he had been there long enough. It would have been January or February. But I'm asking you, is there a piece of evidence that you can point to that the SRO completely missed or ignored? Not the record ended, not after the record closed, no. The SRO had the ability to call anyone to the stand or remand for more testimony, Your Honor. Thank you. Thank you very much. We'll reserve the decision.